**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE "MICKI" HIGGINS, TIFFANY DERAM, and JOSHUA SMOTHERS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | Case No: 17-cv-7637 <br> Judge: <br> Magistrate Judge: |
| THE LAKE COUNTY CIRCUIT COURT CLERK'S OFFICE, THE LAKE COUNTY CIRCUIT COURT CLERK, ERIN CARTWRIGHT WEINSTEIN in her individual and official capacity as Lake County Circuit Court Clerk, DONNA HAMM, in her individual capacity as Deputy Clerk of the Lake County Circuit Court Clerk's Office, and THE COUNTY OF LAKE, a unit of local government, | ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## <u>COMPLAINT</u>

Plaintiffs Michelle "Micki" Higgins, Tiffany Deram, and Joshua Smothers, for their Complaint against Defendants, The Lake County Circuit Court Clerk's Office, The Lake County Circuit Court Clerk, Erin Cartwright, in her individual and official capacity as Lake County Circuit Court Clerk, Donna Hamm, in her individual capacity as Chief Deputy Clerk of the Lake County Circuit Court Clerk's Office, and The County of Lake, a unit of local government, state as follows:

## SUMMARY OF CLAIMS

1.      Plaintiffs, Michelle "Micki" Higgins ("Higgins"), Tiffany Deram ("Deram"), and Joshua Smothers ("Smothers") (collectively "Plaintiffs") bring this action to redress (1) acts of retaliation in violation of the Plaintiffs' exercise of their rights of free speech and association as protected by the First Amendment of the United States Constitution ("First Amendment"), as guaranteed by the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment") pursuant to the Reconstruction Era Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983") (Count I); (2) violations of the Illinois Whistleblower Protection Act, 740 ILCS 174/1 *et seq*. ("the Act") (Count II); and (3) acts in violation of the Plaintiffs' right to equal protection under the law as guaranteed by the equal protection clause of the Fourteenth Amendment through § 1983 (Count IV).

## JURISDICTION

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) and (4) in that this is a suit in equity to redress the deprivation of the Plaintiffs' rights, privileges and immunities under color of state law as secured by the First and Fourteenth Amendments and 42 U.S.C. § 1983.

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 2201, in that this is a suit seeking declaratory judgment under the First and Fourteenth Amendments and § 1983, determining a question in actual controversy between the parties, that is, whether the action of Defendants in terminating Plaintiffs from the Defendant Clerk's

Office, violated the Plaintiffs' right to equal protection of the laws as guaranteed by the First and Fourteenth Amendments and § 1983.

5.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 in that Plaintiffs ask this Court to invoke its supplemental jurisdiction over the state law claims asserted in this Complaint.

6.    Jurisdiction of this of this Court is invoked pursuant to the First and Fourteenth Amendments and § 1983, in that Plaintiffs alleged that a supervisor, Defendant Erin Cartwright Weinstein ("Cartwright") should be held personally liable under the law for her own neglect in showing deliberate indifference and or reckless disregard of Plaintiffs' rights, privileges and immunities under color of state law in failing to properly superintend to the duties of the Deputy Clerk, her subordinate, Defendant Donna Hamm ("Hamm.").

7.    Jurisdiction of this of this court is further invoked pursuant to § 1983, in that Plaintiffs allege that Defendants Cartwright and Hamm individually caused Plaintiffs to be deprived of their rights, privileges and immunities under color of state law and thereby may be held liable because they personally participated in the Constitutional violations alleged and there is a causal connection between their actions and the Constitutional violations alleged.

## **VENUE**

8.    Venue in this Court is proper pursuant to, 28 U.S.C. §1391(b) and (c) in that Defendants all reside in this district and all of the events giving rise to Plaintiffs'

- 3 -

claims and causes of action occurred within this district.

## THE PARTIES

A.  **Defendants**

    1.  **The Lake County Circuit Court Clerk's Office**

9.  Defendant, The Lake County Circuit Court Clerk's Office ("Clerk's Office") operates under the laws of the State of Illinois, and administers itself as a subdivision of Defendant, The County Of Lake ("Lake County"). Defendant, Clerk's Office is headed and run by an individual elected by the registered voters of Lake County every four years, the Clerk of the Circuit Court of Lake County. Plaintiffs sue the Defendant Clerk's Office individually.

    2.  **Circuit Court Clerk Erin Cartwright Weinstein**

10.  Defendant Cartwright was elected Clerk of the Circuit Court Clerk of Lake County in November of 2016 and serves in that position until November 30, 2020 unless reelected in November of 2020. Defendant Cartwright as Circuit Court Clerk has final high policy-making authority with regard to all conduct alleged in this complaint. Defendant Cartwright at all times relevant acted under color of state law.

11.  At all times relevant, Defendant Cartwright made and implemented all of the decisions on her own or as effectively recommended by her subordinate, Deputy Clerk Hamm, as alleged herein, which deprived Plaintiffs of their rights, privileges and immunities under color of state law. Defendant Cartwright is sued in her individual and official capacity.

### 3. Deputy Circuit Court Clerk Donna Hamm

12. Defendant Donna Hamm ("Hamm") is now the Chief Deputy Clerk of the Clerk's Office. She works directly under and reports directly to Defendant Cartwright. Defendant Cartwright relies on Defendant Hamm to run the day-to-day administrative affairs of the Clerk's Office. Defendant Hamm at all times relevant acted under color of state law.

13. Defendant Cartwright relies on Defendant Hamm as a high policy making individual who effectively recommends all personnel decisions made in the Defendant Clerk's Office including all hirings, firings, assignments, transfers, promotions, demotions, assignments and personnel policies and she effectively recommended all of the actions stated herein that deprived Plaintiffs of their rights, privileges and immunities under color of state law. Defendant Hamm is sued in her individual capacity.

### 4. The County of Lake

14. Defendant Lake County is a body politic that operates under the laws of the State of Illinois. It administers itself through departments, one of which is the Defendant Clerk's Office. Defendant Lake County is sued individually.

### B. Plaintiffs

### 1. Michelle "Micki" Higgins

15. Plaintiff Higgins was hired by the Clerk's Office in April of 1985; she worked there for 31 ½ years before being terminated by Defendants Cartwright and Hamm.

16.     Plaintiff Higgins was locked out of the Clerk's Office computer system at 12:01 a.m. on the morning of December 1, 2016, and was suspended on December 1, 2016, the day that Defendant Cartwright was sworn in as Clerk.

17.     Plaintiff Higgins was terminated on December 2, 2016.  At the time she was terminated, Plaintiff Higgins was the Division Chief of the Criminal Division, Division Chief of the Civil Division and Chief over all branch courts.

### 2.     Tiffany Deram

18.     Plaintiff Deram, was hired by the Clerk's Office in November of 1998; she worked there for 17 ½ years.

19.     Plaintiff Deram was locked out of the Clerk's Office computer system at 12:01 a.m. on the morning of December 1, 2016, and was suspended on December 1, 2016, the day that Defendant Cartwright was sworn in.

20.     Plaintiff Deram was terminated on December 2, 2016.  At the time she was terminated, Plaintiff Deram was Division Chief, and was in charge of the Records Division, Small Claims, Calendar, Criminal Traffic Counter, Traffic Court Clerks and Child Support.

### 3.     Joshua Smothers

21.     Plaintiff Joshua Smothers first went to work for the Clerk's Office in February of 2007; he worked there just short of 10 years.

22.     Plaintiff Smothers was suspended on December 1, 2016, and was terminated on December 2, 2016.  At the time of his termination, Plaintiff Smothers was Supervisor, Round Lake Beach and Interim Supervisor, Records Department.

## BACKGROUND

**The Clerk's Office Has Always Been Very Political Except When Keith Brin Was the Clerk of the Circuit Court**

23.     Before Keith Brin ("Brin") was the elected Clerk of the Circuit Court, the Clerk's Office was always very political. Brin's predecessor used the Clerk's Office like her own family employment agency.  She employed her son, brother, nieces and nephew there; she also employed others connected to her family in various ways.

24.     All of these patronage/relative employees were employed by Brin's predecessor in high salaried positions, among the highest paying positions in the Clerk's Office.

25.      In the last election, once it became clear that the political winds were shifting in favor of Cartwright and against Brin, Brin's predecessor suddenly endorsed Cartwright and started posting on Cartwright's websites in favor of Cartwright to protect what remained of her patronage/relative employees at the Clerk's Office.

26.     As a result, Defendant Cartwright has allowed those patronage/relatives employees to remain employed in high paying positions at the Clerk's Office since her election.

27.     Conversely, Plaintiffs, who were known Brin supporters, were politically targeted by both Hamm and Cartwright in the election and were locked out of the Clerk's Office computer system at 12:01 a.m. on the morning of December 1, 2016, even before Defendant Cartwright was sworn in.

28.     Cartwright was sworn in at approximately 8:00 a.m. on the morning of December 1, 2016.  Approximately one hour later, Plaintiffs were suspended. Plaintiffs were physically escorted out of the office before Cartwright arrived after the swearing in, and they were officially terminated the very next day, on December 2, 2016.

29.     The manner in which Defendants handled the suspensions and terminations was deliberate, abrupt, and intended to humiliate Plaintiffs.

30.     Other employees who supported Brin who were also targeted who have also been demoted or forced out for political reasons by Cartwright and Hamm as soon as Cartwright took office.

31.     Defendants' political targeting through terminations, demotions, and force outs were a top priority during Cartwright's first month in office.

**Cartwright's Political Targeting of the Plaintiffs**

32.      A reason why Defendant Cartwright entered the race for Clerk was because the union seeking to represent the Clerk's Office employees wanted a candidate who would support a lucrative collective bargaining agreement.

33.     Brin was opposed to the union and declared that a union would drive up the cost of doing business for the taxpayers.  Accordingly, the union sought to replace Brin with Defendant Cartwright.

34.     Cartwright made no secret as part of her campaign that she would replace Plaintiffs by firing them if she was elected Clerk because she believed them all to be staunch allies of Brin.

- 8 -

35.     Cartwright, through her campaign website and a website which was, on information and belief, either supported by her or working in conjunction with her campaign called "No Keith Brin in 2016" (hereafter collectively referred to as "the websites", "her websites" or "the Cartwright websites"), posted pictures of Plaintiffs planting Keith Brin signs during the campaign and falsely suggested that such activity was occurring while they were supposed to be working.

36.     Cartwright directly, and through the websites, repeatedly called for the ouster of Plaintiffs should she win.

37.     Comments on the websites were, on information and belief, directed, authored, or encouraged by the Cartwright campaign (though designed to look like they were spontaneous comments from the public), called for the ouster of Keith Brin and Plaintiffs, sometimes specifically identifying them by name.

38.     Rebecca Cook, who had resigned from the Clerk's Office while under discipline by Brin, became strong supporter of the Cartwright campaign in order to be rehired for political reasons if Cartwright won.

39.     Defendant Hamm likewise had resigned from the Clerk's Office after Brin confronted her about serious job performance issues.  She too became a strong supporter of the Cartwright campaign in order to be rehired for political reasons if Cartwright won.

40.     Cartwright directly and through the web sites also falsely claimed that Brin and Deram were behind the departure of allegedly hard working competent and blameless Clerk's office employees like Defendant Hamm, Rebecca Cook and Joan Neal, who had

long histories of poor performance and insubordination and should have been terminated long before Brin became Clerk.

41.     Cartwright pledged she would bring such employees back, and she did exactly that when she won – she immediately rehired Hamm, Cook, and Neal.

42.     Cartwright, under the advice of Defendant Hamm, has brought back Hamm, Neal, Rebecca Cook and other poor performers for political reasons and has promoted other poor performers into management roles for political reasons while at the same time terminating Plaintiffs for political reasons.

## Plaintiffs Were Known Supporters of Keith Brin

43.     As indicated above, Plaintiffs were known to be active supporters of Brin for re-election as Circuit Court Clerk, Defendant Cartwright's opponent.  Plaintiffs were often volunteers at Clerk's Office events supporting Brin, and Defendants Cartwright and Hamm were well aware of such activities.

44.     During the campaign, Plaintiffs would show up at these events wearing Brin re-election t-shirts and buttons.

45.     When Cartwright attended these events, she often saw Plaintiffs there wearing Brin t-shirts and buttons, prompting her to stare and glare at them.  This happened, among other times, at a Fourth of July Parade, the Lake County Fair and the Highwood Pumpkin Fest in July of 2016.

46.     Defendants Cartwright and Hamm also knew Plaintiffs were at these events wearing Brin campaign t-shirts and buttons because people in the Cartwright campaign

reported such activity back to Cartwright and Hamm.

47.     Plaintiffs also had Brin campaign signs and material placed on their lawns at their homes in Lake County.

48.     Defendant Cartwright's husband was a client of Deram's parents and knew where Deram lived; he knew that Deram's parents and Plaintiff Deram had Brin campaign material at their homes and on their lawns.   Cartwright's husband also glowered at Plaintiffs when he encountered them at events sporting Brin's t-shirts and/or buttons.

49.     Defendant Hamm lives very close to Plaintiffs Higgins and Smothers; she saw and knew that Higgins and Smothers had Brin signs and posters at their homes and on their lawns.

50.     Defendants Cartwright and Hamm, knowing that Plaintiffs were active and enthusiastic supporters of Brin, targeted Plaintiffs for termination in the election campaign.

51.     When Cartwright won, she terminated Plaintiffs because of their support of Keith Brin.

**Retaliation for Reporting, Suspending and Firing Clerks who Altered
Court Files to Help Felons who Were Illegals Reenter Lake County at Will**

52.     In approximately March of 2015, Plaintiff Deram audited the work of two clerks working directly under the supervision of Defendant Hamm, and Rebecca Cook. One of the subordinate clerks, it was discovered, who was a "civil" clerk, had been using her access to the files in the court system to access criminal court files.

53.     A civil clerk has no business altering any data in the system. Her supervisor Defendant Hamm, failed to implement security measures to prevent this subordinate clerk from altering criminal files, despite her long tenure in the Clerk's Office.

54.     Because of the lack of security and the lack of adequate supervision by this Clerk's supervisors, this clerk used her access to change or alter the court records of five individuals, including the files of her husband and daughter. A redacted summary of such files is attached as Exh. A.

55.     One such individual was a convicted felon who had been twice deported.

56.     With respect to the files she altered, on one she made changes on eleven different electronic file entries on the individual's court files over three separate days. Her changes included:  (1) altering this person's date of birth making him 15 years younger on one entry; (2) changing his weight by taking off 30 pounds on another entry (same person);  (3)  altering his hair from Brown to Black; (4) altering his height by making him nine inches shorter; (5) changing his weight again making him 30 pounds lighter again (same person); (6) changing his date of birth on a second file (again, same person); (7) changing his race by removing a certain code from the race field; (8) changing his date of birth on a third file (changing the date of birth on the same individual a third time); (9) changing his name from a male name to a female name; (10) changing his date of birth on a fourth file entry (same person fourth time); and (11) changing his gender from male to female on another entry.

57.     In all, this clerk transformed what at the start of the alterations was a 41 year-old male of a particular race, height, 5'9," weight 185 lbs., and changed him eventually into a 31 year-old non-descript female of a different race, height 5,' weight 125 lbs. *See* Exh. A.

58.     If this individual had any outstanding warrants on him, through these alterations, the clerk it impossible for any of the warrants to be served on him anywhere in the country.  She also made it impossible for his background to be identified if he was deported and trying to enter the country and they were doing a background check on him.

59.     In the case of another person, she altered his court files eight times over a two-day period, including changing his date of birth in four entries, and changing his name on three entries.

60.     This clerk also at one point removed a court file from the Clerk's Office and had the file listed as "impounded" so that no one would know that the file had been improperly removed.

61.     It is believed that this same clerk made similar changes to the electronic court files of her husband, son and daughter.

62.     It is believed that this clerk had done this before and had been altering criminal court records for many individuals with warrants outstanding for them.

63.     This clerk also had a sister working for the Clerk's Office, who Plaintiff Deram also caught altering court files, including her own mortgage foreclosure file.

64.     Both of these clerks were caught engaging in these activities under the direct supervision of Defendant Hamm, who has been rehired by Cartwright for political reasons.

65.     The clerks involved in this unlawful conduct were reported to law enforcement officials by Plaintiff Deram, Deputy Clerk Jeanne Polydoris, and Brin, and were terminated.

66.     For political reasons, one of them was invited to attend as a guest at Defendant Cartwright's swearing in ceremony on December 1, 2016, and is seen in a video of the inauguration.

67.     While both clerks were fired, one apparently tried to claim she was off on disability leave to try to avoid being terminated for what she did.

68.     Defendant Hamm resigned rather than accept further discipline.

69.     Defendant Hamm was aware that Plaintiff Deram along with Deputy Chief Jeanne Polydoris reported the events concerning the file tampering to law enforcement authorities.

70.     Defendant Hamm was also aware of other improprieties that Plaintiff Deram became aware of under her and Cook's supervision with respect to Cook's supervision of the evidence room.

71.     Deram discovered that there were inadequate security controls to prevent unauthorized access to the evidence room to prevent tampering with evidence in criminal cases, thus jeopardizing virtually all of the criminal cases currently pending in Lake

County. For example, there were no procedures in place to insure documented chain of custody for evidence in criminal cases. There were no controls to adequately identify who had retrieved evidence from that room or where it had been moved. As the result of these problems, key evidence was missing for criminal prosecutions.

72. The evidence and property room was not being handled in a way that came anywhere close to the standards as set forth in the **Commission on Accreditation for Law Enforcement Agencies, Inc. (CALEA®), and the International Association for Property and Evidence (IAPE), which standards Clerk Brin had directed Hamm and Cook to follow.**

73. This, too, happened on Defendant Hamm's supervision and Cook's responsibility.

74. Plaintiff Deram reported her concerns over the dangerously mismanaged evidence room to Brin and Polydoris. Thereafter, Cook was reprimanded, causing her to resign.

75. Defendants Hamm and Cartwright sought to blame these serious problems on Brin by discrediting and firing Plaintiff Deram. Meanwhile, Cartwright rehired Cook, and put her back in charge of the same evidence room which she had earlier so dangerously mismanaged.

### Evidence of Pretext and Mendacity - Cartwright's
### Inconsistent Explanations for Terminating Plaintiffs

76. Defendant's mendacity is demonstrated by the false explanations given each of Plaintiffs for their terminations.

77.    Plaintiff Higgins was told she was being terminated due to a restructuring and a job elimination, and yet her job continues to be performed by others.

78.    Plaintiff Deram was told she was being terminated due to a "change in management."

79.    Plaintiff Smothers was told he was being terminated due to a "reduction in force" but his work is still being done.  Indeed, now it takes two people to do Smothers' job.

**COUNT I**
**(§ 1983 – First Amendment Retaliation**
**All Plaintiffs v. All Defendants)**

80.    Plaintiffs restate and re-allege by reference paragraphs 1 through 79 as if fully set forth herein against all Defendants.

81.    At all times relevant hereto, Defendants Cartwright and Hamm acted as employees, supervisors, and final policymakers for Defendant Clerk's Office and thereby Defendant Lake County.

82.    The First Amendment, through the Fourteenth Amendment and § 1983, protects a wide spectrum of free speech, including the right of public employees to support the candidate of their choice in an election without retaliation.

83.    The First Amendment the Fourteenth Amendment and § 1983 protect the free speech right of public employees to wear campaign t-shirts and campaign buttons of the candidate of their choice in an election at Clerk's Office events that they volunteer at without campaigning, without being retaliated against.

84.     The First Amendment the Fourteenth Amendment and § 1983 protect the right of public employees to place campaign signs of the candidate of their choice in an election, on the lawns of peoples' homes who approve of it or ask for the signs, when said signs are placed in such locations by the public employees when they do so on their own time when not working for any employer.

85.     The First Amendment the Fourteenth Amendment and § 1983 protect the right of public employees to associate with the candidate of their choice in an election without being retaliated against.

86.     Defendants, by targeting Plaintiffs for termination during the election for Clerk of the Circuit Court in 2016, by locking the Plaintiffs out of their Clerk's Office computer terminals at 12:01 a.m. on the morning of December 1, 2016, and by suspending Plaintiffs on December 1, 2016, one hour after Cartwright was sworn in, and then terminating Plaintiffs on December 2, 2016 for no reason other than the fact that they were supporters of Defendant Cartwright's opponent in the election, retaliated against Plaintiffs and violated their free speech rights under the First Amendment through the Fourteenth Amendment and § 1983.

87.     The actions of Defendants and each of them, in retaliating against Plaintiffs and in facilitating, aiding, abetting and condoning said retaliation, caused Plaintiffs compensable injuries and harmed them in the exercise of their First Amendment rights as guaranteed by the Fourteenth Amendment and § 1983.

88.   The actions of Defendants and each of them, in retaliating against Plaintiffs and in facilitating, aiding, abetting and condoning said retaliation, chilled Plaintiffs' exercise of their First Amendment rights as guaranteed them by the Fourteenth Amendment and § 1983.

89.   The actions of Defendants and each of them, in retaliating against Plaintiffs and in facilitating and condoning said retaliation, denied Plaintiffs' exercise of their First Amendment rights as guaranteed them by the Fourteenth Amendment and  § 1983.

90.   The actions of Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, damage to their reputations, and will continue to cause them future pecuniary losses, and other consequential damages in violation of their First Amendment rights guaranteed them through the Fourteenth Amendment and § 1983.

91.   The actions of Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by the First Amendment through the Fourteenth Amendment and § 1983.

**WHEREFORE**, Plaintiffs seek the following relief as to Count I of the Complaint:

A.   The entry of judgment against all Defendants;

B.   All wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

C.      Compensatory damages for the mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience and damage to their reputations, in an amount to be determined at trial;

D.      A permanent injunction enjoining Defendants from engaging in the Constitutional violations complained of herein against Plaintiffs and against any other Clerk's Office employee in any upcoming and future elections by firing, transferring, harassing, demoting and otherwise retaliating against in any way, any Clerk's Office employee for actively supporting and wearing campaign paraphernalia of any candidate of their choice while working at the Clerk's Office and prohibiting the Clerk's Office from refusing to rehire or hire any individual because of a political candidate they have worked for or supported, or face contempt of court;

E.      A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983;

F.      A declaratory judgment that Defendants' actions violated the First Amendment to the United States Constitution;

G.      That this Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law and free of any First Amendment retaliation behavior of any sort;

H.      Grant Plaintiffs an award of punitive damages as allowed by law as against

the individual Defendants for each offense;

I.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

J.      Grant Plaintiffs such other relief as the Court may deem just, equitable and appropriate.

## COUNT II
### (Violation of the Illinois Whistleblower Act --
### Plaintiff Deram v. All Defendants)

92.     Plaintiffs Deram repeats and re-alleges paragraphs 1 through 91 against all Defendants as though fully set out herein.

93.     In the alternative or in addition to the allegations of Count I, Plaintiff Deram avers that Defendants retaliated against Plaintiff Deram in the terms and conditions of her employment by suspending and then firing her in retaliation for reporting to law enforcement authorities the two Clerks as described above, for engaging in the illegal altering of court files as more specifically described above who worked under Defendant Hamm.

94.     Further, Defendant Hamm has harbored a grudge against Plaintiff Deram for getting her disciplined into a position where she felt she had no choice but to leave the Clerk's Office, because Hamm failed to properly supervise the two Clerks who engaged in criminal activity.

95.     Further, Defendant Hamm has harbored a grudge against Plaintiff Deram because she also discovered and reported that there were serious improprieties with the

evidence room managed by Rebecca Cook who was under Defendant Hamm's direct supervision.

96.     To retaliate for Plaintiff Deram's reporting of the illegal activities that took place under Defendant Hamm's supervision as detailed above, and to avoid further scrutiny of her role in the serious managerial errors made with the evidence room as detailed above under Hamm's supervision of Rebecca Cook, Defendant Hamm terminated Plaintiff Deram by effectively recommending her termination to Defendant Cartwright.

97.     To ensure that no further criticism of mismanagement of the evidence room would surface, Defendant Hamm brought back Clerk Rebecca Cook to supervise once again the evidence room she had jeopardized before.

98.     Plaintiffs had reasonable cause to believe that the actions of the clerks as described above were a violation of state and or federal law and that the highly improper supervision by Cook of the evidence room as detailed above, at the Clerk's Office was jeopardizing all of the criminal cases in Lake County.

99.     Plaintiff Deram was retaliated against in violation of rights guaranteed to her by the Illinois Whistleblower Act, 740 ILCS § 174/15, and she has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish, embarrassment, and humiliation.

**WHEREFORE,** Plaintiff seeks the following relief as to Count II of the Complaint:

A.      The entry of judgment against all Defendants;

B.      A permanent injunction against Defendants from continuing to violate Plaintiffs 'rights under Illinois Whistleblower law, by ordering Defendants to:

    (1)      stop engaging in the retaliatory practices complained of herein; and

    (2)      adopt employment practices and policies in accord and conformity with the requirements of state law;

C.      Award Plaintiff compensatory damages in amounts that will reasonably compensate her for her losses;

D.      Assess punitive damages against the individual Defendants;

E.      Award Plaintiff her costs and attorneys' fees in this action; and

F.      Grant such further and other relief as is just and proper.

### COUNT III
### (Violation of Illinois Ethics Act – Plaintiff Deram v. All Defendants)

100.    Plaintiff Deram restate and re-allege by reference paragraphs 1 through 99 above as though fully set forth herein.

101.    Plaintiff Deram was retaliated against in violation of rights guaranteed to her by the Illinois Ethics Act, 5 ILCS § 430/15, and she has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish, embarrassment, and humiliation.

**WHEREFORE,** Plaintiff seeks the following relief as to Count III of the Complaint:

A.      The entry of judgment against all Defendants;

B.     A permanent injunction against Defendants from continuing to violate Plaintiffs' rights under Illinois Whistleblower law, by ordering Defendants to:

(1)     stop engaging in the retaliatory practices complained of herein; and

(2)     adopt employment practices and policies in accord and conformity with the requirements of state law;

C.     Award Plaintiff compensatory damages in amounts that will reasonably compensate her for her losses;

D.     Assess punitive damages against the individual Defendants;

E.     Award Plaintiff her costs and attorneys' fees in this action; and

F.     Grant such further and other relief as is just and proper.

**COUNT IV**
**(§ 1983 Violation of Equal Protection -- All Plaintiffs v. All Defendants)**

102.   All Plaintiffs restate and re-allege by reference paragraphs 1 through 101 above as though fully set forth herein.

103.   As described above, Defendants intentionally deprived Plaintiffs of their right to equal protection under the law and altered the terms and conditions of the Plaintiffs' employment when they subjected them to retaliatory treatment as a result of their exercise of their free speech rights protected by the First Amendment through the Fourteenth Amendment and § 1983.

104.   Defendants failed to provide proper training to their managers, supervisors and employees and Defendants Cartwright and Hamm were not properly trained our counseled by Defendant Lake County to prevent the acts of retaliation against Plaintiffs

- 23 -

for exercising their free speech rights as described above and as protected by the First Amendment, through the Fourteenth Amendment and § 1983.

105.    Defendants' failure to train and Defendant Lake County's failure to train and or properly counsel Defendant Cartwright and Hamm was deliberately indifferent to the rights of employees within their purview including Plaintiffs.

106.    The actions of Defendants including and especially Defendant Lake County and its failure to prevent Defendant Cartwright and Hamm from engaging in the acts of retaliation and described above, were intentional, willful, malicious and/or in deliberate indifference for and of Plaintiffs' rights as secured and protected by the First and Fourteenth Amendments and § 1983.

107.    The actions of Defendants in intentionally engaging in, condoning, aiding and abetting the discriminatory and retaliatory acts indicated above against Plaintiffs, caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, damage to their reputations, and will continue to cause them future pecuniary losses, and other consequential damages in violation of their First Amendment rights guaranteed them through the Fourteenth Amendment and § 1983, and their Fourteenth Amendment rights as secured by § 1983.

**WHEREFORE**, Plaintiffs seek the following relief as to Count IV of the Complaint:

A.    The entry of judgment against all Defendants;

- 24 -

B.      All losses including all lost wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

C.      Compensatory and or punitive damages in an amount to be determined at trial to compensate Plaintiffs for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

D.      A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

E.      A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983.

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.      Such other relief as the Court may deem just or equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury on all claims.

Dated:  October 23, 2017

Respectfully submitted,

*/s/ Paul K. Vickrey*
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Gretchen L. Schmidt (schmidt@vvnlaw.com)
Dylan M. Brown (dbrown@vvnlaw.com)
**VITALE, VICKREY, NIRO & GASEY LLP**
311 S. Wacker Dr., Suite 2470
Chicago, Illinois 60606
Tel.:   (312) 236-0733
Fax:   (312) 236-3137

**Attorneys for Tiffany Deram, Michele
"Micki" Higgins, And Joshua Smothers**

- 26 -