# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE "MICKI" HIGGINS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE LAKE COUNTY CIRCUIT COURT ) <br> CLERK'S OFFICE, et al., ) <br> ) <br> Defendants. ) | No. 17-cv-07637 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michelle "Micki" Higgins, Tiffany Deram, and Joshua Smothers—all former long-time employees of the Lake County Circuit Court Clerk's Office ("Clerk's Office")—have sued the Clerk's Office, Lake County Clerk of Court Erin Cartwright Weinstein, Chief Deputy Clerk Donna Hamm, and Lake County under 42 U.S.C. § 1983 for alleged violations of their First Amendment and Equal Protection rights. Plaintiffs allege that they were punished for voicing their support of Keith Brin, Cartwright Weinstein's opponent in the 2016 election for Lake County Circuit Court Clerk. Now before the Court are Defendants' motions to dismiss to the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 25, 29.) For the reasons explained below, both motions are granted in part and denied in part.

## BACKGROUND

For the purposes of Defendants' motions to dismiss, this Court accepts as true the well-pleaded facts in Plaintiffs' Complaint and views them in the light most favorable to Plaintiffs. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). Plaintiffs have alleged as follows.

Plaintiffs are former longstanding employees of the Clerk's Office: Higgins worked there for over 31 years, Deram for over 17 years, and Smothers for almost ten years. (Compl. ¶¶ 15, 18, 21, Dkt. No. 1.) At the time Higgins was terminated, she held the title "Division Chief of the Criminal Division, Division Chief of the Civil Division, and Chief over all branch courts." (*Id.* ¶ 17.) When Deram was terminated, she held the title "Division Chief of the Records Division, Small Claims, Calendar, Criminal Traffic Counter, Traffic Court Clerks and Child Support." (*Id.* at ¶ 20.) And when Smothers was terminated, he was "Supervisor, Round Lake Beach and Interim Supervisor, Records Department." (*Id.* ¶ 22.)

Plaintiffs all supported Keith Brin in the 2016 election for Lake County Circuit Court Clerk. (*Id.* ¶¶ 27–28.) Cartwright Weinstein, Brin's opponent in the race, saw Plaintiffs wearing Brin t-shirts and buttons at election events, and she stared and glared at them. (*Id.* ¶¶ 44–45.) Cartwright Weinstein also repeatedly "called for the ouster of Plaintiffs" on her campaign website. (*Id.* ¶ 36.) Hamm, who was a strong supporter of Cartwright Weinstein's campaign, lives very close to Higgins and Smothers, so she knew that they displayed Brin campaign materials at their homes and on their lawns. (*Id.* ¶¶ 39, 49.)

Cartwright Weinstein ultimately won the election and, at approximately 8:00 a.m. on December 1, 2016, she was sworn in as Court Clerk. (*Id.* ¶¶ 10, 28.) About an hour later, Plaintiffs were suspended; the following day, they were terminated. (*Id.* ¶¶ 16, 17, 19, 20, 22, 51.) Each Plaintiff was given a reason for his or her termination that Plaintiffs claim was not the truth: Higgins was told she was terminated due to a restructuring and job elimination, but her job continues to be performed by other employees (*id.* ¶ 77); Smothers was told he was terminated due to a reduction in force, but his work also continues to be done by other employees (*id.* ¶ 79); and Deram was told she was terminated due to a change in management (*id.* ¶ 78).

Plaintiffs initially brought four claims against Defendants in this lawsuit but then voluntarily dismissed Counts II and III. (*See* Dkt. No. 35). So, at this point, only Counts I and IV remain. Plaintiffs assert both of those counts against all Defendants under 42 U.S.C. § 1983, alleging violations of their rights under the First Amendment (Count I) and the Equal Protection Clause of the Fourteenth Amended (Count IV) to the United States Constitution.

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

I. **Count IV – Equal Protection Claim**

Counts I and IV are nearly identical, as the Equal Protection claim alleges that "Defendants intentionally deprived Plaintiffs of their right to equal protection . . . when they subjected them to retaliatory treatment as a result of their exercise of their free speech rights protected by the First Amendment . . . ." (Compl. ¶ 103.) However, "the right to be free from retaliation may be vindicated under the First Amendment or Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*], but not the equal protection clause." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004). For example, in *Vukadinovich v. Bartels*, 853 F.2d 1387 (7th Cir. 1988), the Seventh Circuit affirmed the district court's grant of summary judgment in favor of

the defendants because the plaintiff's equal protection claim alleged "only that he was treated differently because he exercised his right to free speech," and thus was a "mere rewording of plaintiff's First Amendment retaliation claim." *Id.* at 1391–92. In the same way, Plaintiffs' equal protection claim in this case constitutes no more than a mere rewording of their First Amendment retaliation claim. Therefore, the Court dismisses Count IV against all Defendants, albeit without prejudice, in the event Plaintiffs can allege a set of facts to suggest that their equal protection claim encompasses illegal conduct other than retaliation for their protected activity. *See, e.g.*, *La Playita Cicero, Inc. v. Town of Cicero, Ill.*, 175 F. Supp. 3d 953, 964–968 (N.D. Ill. Mar. 30, 2016) (denying summary judgment where plaintiff showed genuine issues of material fact on First Amendment retaliation and equal protection claims).

## II. Count I – First Amendment Claim

The Court now turns to Plaintiffs remaining claim. In Count I, Plaintiffs assert a § 1983 claim for First Amendment retaliation. To plead a *prima facie* case of First Amendment retaliation, Plaintiffs must allege that (1) they engaged in activity protected by the First Amendment, (2) they suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was "at least a motivating factor" in Defendants' decision to retaliate. *Gekas v. Vasiliades*, 814 F.3d 890, 895 (7th Cir. 2016). Defendants advance a variety of arguments for dismissal.

### A. Plaintiffs' Claims Against the Clerk's Office and Cartwright Weinstein in Her Official Capacity

As a preliminary matter, the Court observes that Plaintiffs' claim against Cartwright Weinstein in her official capacity as Lake County Circuit Court Clerk is duplicative of their claim against the Clerk's Office, as "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 70 (1989). Therefore, the Court dismisses Plaintiffs' claim against Cartwright Weinstein in her official capacity as duplicative.

For its part, the Clerk's Office argues that § 1983 does not authorize suits against it. Indeed, it is correct that the Eleventh Amendment shields states and state officials acting in their official capacities from suits for damages brought under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (holding that "[n]either a State nor its officials acting in the official capacities are 'persons' under § 1983," but recognizing that this limitation does not prevent suits for prospective relief). However, the Eleventh Amendment does not forbid suits against state officials that seek only injunctive relief. *Id.*; *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000).

Here, Plaintiffs seek damages, a permanent injunction enjoining further First Amendment retaliation, and a permanent injunction requiring Defendants to adopt constitutional employment practices and policies. Despite Defendants' characterization of Plaintiffs' request for injunctive relief as "procedural maneuvering" or "a ruse," the law permits plaintiffs to seek such relief against state officials. *See id.* (in a First Amendment retaliation case, acknowledging that claims against the state seeking only injunctive relief are not forbidden by the Eleventh Amendment and that "[t]he simplest form of [injunctive] relief would be an injunction forbidding retaliation"). Therefore, the Court dismisses Count I with prejudice against the Clerk's Office to the extent Plaintiffs seek damages but allows Plaintiffs to continue under Count I for purposes of pursuing injunctive relief.

### B. Plaintiffs' Claims Against Cartwright Weinstein in her Individual Capacity

Plaintiffs have also brought suit against Cartwright Weinstein in her individual capacity. A state official may be sued in her individual capacity pursuant to § 1983. *See Novoselsky v. Brown*,

822 F.3d 342, 348 (7th Cir. 2016) (holding that federal jurisdiction exists over plaintiff's § 1983 First Amendment retaliation claim against the Clerk of the Circuit Court of Cook County in her individual capacity). To state such a claim for personal liability under § 1983, Plaintiffs must allege that Cartwright Weinstein was "personally involved in the deprivation of [their] constitutional rights." *Whitford v. Boglino*, 63 F.3d 527, 530–31 (7th Cir. 1995).

Plaintiffs have adequately alleged that Cartwright Weinstein violated their First Amendment rights by terminating them for supporting Brin in the 2016 election. The Complaint contains allegations that Cartwright Weinstein was personally involved in Plaintiffs' termination; for example, Cartwright Weinstein called for Plaintiffs to be terminated on her campaign website, and she stared and glared at them when she saw them wearing Brin t-shirts and buttons. (Compl. ¶¶ 36, 37, 45.) Also, Plaintiffs' support for Keith Brin is an activity protected by the First Amendment. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (internal quotation marks omitted)). Furthermore, Plaintiffs allege that Cartwright Weinstein suspended them one hour after she was sworn in to office and then terminated them; both suspensions and terminations qualify as adverse actions that would likely deter future First Amendment activity. *See Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 671 (7th Cir. 2009) ("There is no dispute that Defendants, in firing [Plaintiff], caused her to suffer an adverse action likely to chill her freedom of speech."). Finally, Plaintiffs allege that they were suspended and terminated "for no reason other than the fact that they were supporters of [Brin]." (Compl. ¶ 86.) In sum, the Complaint adequately alleges a First Amendment claim against Cartwright Weinstein in her individual capacity.

### C. Plaintiff's Claims Against Hamm

Hamm argues that Plaintiffs have failed to state a claim against her because they do not allege that she caused them to suffer an adverse action; rather, it was Cartwright Weinstein who fired them. But plaintiffs may assert retaliation claims against defendants other than their employer or highest-ranked supervisor.[1] *See, e.g.*, *Milliman v. Cty. of McHenry*, 893 F.3d 422, 431 (7th Cir. 2018) (retaliation claim against Sheriff, Undersheriff, Commander, Sergeant, and Lieutenant); *Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2018) (retaliation claim against deputy directors). Similarly, a retaliation claim may be premised on an adverse action other than termination. *See Mosely v. Bd. of Educ. Of City of Chi.*, 434 F.3d 527, 533–34 (7th Cir. 2006) ("[A]ny deprivation under color of law that is likely to deter the exercise of free speech is actionable."); *e.g.*, *Gustafson v. Jones*, 290 F.3d 895, 913 (7th Cir. 2002) (affirming verdict against chief of police and deputy inspector who retaliated against plaintiffs by transferring them to less desirable assignments).

Here, Plaintiffs have alleged that Hamm "effectively recommended" to Cartwright Weinstein that Plaintiffs be terminated for supporting Brin. (Compl. ¶ 13.) This recommendation qualifies as an adverse action likely to deter the exercise of free speech. Moreover, Plaintiffs have also alleged that Hamm "knew that Higgins and Smothers had Brin signs and posters at their homes and on their lawns" prior to making this recommendation. (Compl. ¶ 49.) These allegations

---

[1] The parties have also argued the applicability of the "cat's paw" theory of liability in their respective briefs. The cat's paw theory applies in employment discrimination cases when a "biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015); *see, e.g.*, *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (categorizing plaintiff's claim under cat's paw theory of liability where he alleged racist co-worker tricked plaintiff's employer into firing him). However, the cat's paw theory does not appear to apply here because the complaint contains no allegations that Cartwright Weinstein was duped by Hamm; on the contrary, Plaintiffs have brought accusations of retaliation directly against Cartwright Weinstein.

are sufficient to establish that Hamm was "personally involved" in retaliating against Plaintiffs, as required when suing a defendant in her individual capacity. *Whitford*, 63 F.3d at 530–31.

Hamm also argues that Cartwright Weinstein herself wanted to fire Plaintiffs for supporting Brin, regardless of any recommendation by Hamm. However, "[the] pleading rules . . . permit inconsistencies in legal theories," particularly regarding issues such as an employer's motivations. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("Although the defendants ultimately may be able to prove that they would have engaged in the same conduct [absent discriminatory motive] . . . that is a question to be confronted later in the litigation when the plaintiff is put to her proof."). Hamm may be able to obtain summary judgment if the evidence shows that she played no role in Plaintiffs' termination, *see, e.g.*, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 568 (7th Cir. 2015) (affirming summary judgment in favor of supervisor who had no input in the decisions to terminate plaintiffs); *Massey v. Johnson*, 457 F.3d 711, 718 (7th Cir. 2006) (affirming summary judgment in favor of supervisor because employer's ultimate decision to fire plaintiff was not based on supervisor's recommendation), but the Court will not dismiss Count I against Hamm on such grounds based on the pleadings.

Hamm alternately argues that even if she recommended Plaintiffs be terminated, she acted not "under color of law" but rather as a private citizen. "[A]ction is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (internal quotations omitted). As part of her argument that she did not act under color of state law, Hamm argues that her recommendation that Cartwright Weinstein fire Plaintiffs "would have had to have happened when Hamm was a private citizen," as Cartwright Weinstein already decided to fire Plaintiffs before the election. (Defs. Donna Hamm and Cty. of

Lake's Reply Mem. in Support of Mot. to Dismiss at 4, Dkt. No. 38.) However, Hamm does not dispute that if she indeed recommended as Chief Deputy Clerk that Plaintiffs be fired for exercising their First Amendment rights—as alleged in the Complaint—such action would have taken place under color of state law. Instead, Hamm again raises a factual dispute about when and why Cartwright Weinstein decided to fire Plaintiffs, which the Court will not decide in considering the present motion to dismiss. *Cf. Delgado v. Jones*, 282 F.3d 511, 521 (7th Cir. 2002) (rejecting deputy police chief's qualified immunity claim asserting that her only role was to forward a memorandum about plaintiffs to the chief, because "[a]t this early stage in the litigation [motion for judgment on the pleadings], we have insufficient facts to conclude that Deputy Chief Ray played no part in any retaliation against Delgado"). Here, the Complaint alleges that Cartwright Weinstein hired Hamm as Chief Deputy Clerk after the 2016 election. (Compl ¶ 41.) In that position, Hamm has the power to make recommendations to Cartwright Weinstein regarding hirings, firings, and other personnel decisions. (*Id.* ¶¶ 12, 13.) Thus, drawing all possible inferences in favor of Plaintiffs, Hamm was clothed in the authority of state law and performing "the duties of [her] state office" when she recommended Plaintiffs' termination. *Wilson*, 624 F.3d at 392.

Hamm bases her last argument for dismissal on the doctrine of qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reiche v. Howards*, 566 U.S. 658, 664 (2012). While it is clearly established that the First Amendment protects an employee's right to political speech or other political activities, *see City of San Diego v. Roe*, 543 U.S. 77, 80 (2004) ("A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her

9

employment."), "the First Amendment does not prohibit the discharge of a policy-making employee" for political reasons. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 358 (7th Cir. 2005). A position involves policy-making if the position "authorizes, either directly or indirectly, meaningful input into government decision[-]making on issues where there is room for principled disagreement on goals or their implementation." *Id.* at 355.

The Seventh Circuit has repeatedly held that whether an employee was a policy-maker presents a "difficult" question of fact for district courts. *Id.*; *see also Jacobs v. City of Chi.*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). According to Plaintiffs, their duties did not extend beyond administrative functions and supervising other employees in the office. (Pl.'s Opp. to County Defs.' Mot. to Dismiss at 10, Dkt. No. 37.) Also, Plaintiffs all worked at the Clerk's Office for over ten years—Higgins, the highest-ranked of the three, worked there for over 31 years—and survived previous transitions of elected clerks, weakening Hamm's claim that they held policy-making or confidential positions. *Id.* Further, Plaintiffs were given a variety of reasons for their termination, ranging from restructuring to reduction of the work force; none of them were told that they had to be replaced due to the policy-making or confidential nature of their position. (*See* Compl. ¶¶ 77–79.) For her part, Hamm does not point to anything in the Complaint other than Plaintiffs' job titles to show that they gave meaningful input into government decision-making. Ultimately, Hamm bears the burden of establishing that Plaintiffs' positions "fall[] within the exception to the general prohibition on patronage dismissal," and she has not met that burden. *Kiddy-Brown*, 408 F.3d at 354. Perhaps discovery will provide Hamm with the evidence required to support a qualified immunity defense, but at the motion-to-dismiss stage, her argument fails.

### D. Plaintiff's Claims Against Lake County

Finally, the Court turns to Lake County's argument for dismissal. The Complaint contains no allegations against Lake County; however, Illinois law designates Lake County as an indispensable party to Plaintiffs' suit against the Clerk's Office.[2] Accordingly, the Court dismisses Count I against Lake County to the extent Plaintiffs seek to assert a substantive claim against it, but Lake County will remain a party to the litigation for indemnification purposes.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 25, 29) are both granted in part and denied in part. Specifically, Count IV is dismissed without prejudice as to all Defendants. Count I is dismissed as to the Clerk's Office and Cartwright Weinstein, acting in her official capacity, to the extent Plaintiffs seek damages; Plaintiffs may proceed on their claim for injunctive relief against the Clerk's Office and on their claim for damages against Cartwright Weinstein in her individual capacity. Finally, Count I is dismissed as to Lake County; however, Lake County will remain a party to the litigation for indemnification purposes.

ENTERED:

Dated: March 29, 2019

_____
Andrea R. Wood
United States District Judge

---

[2] In *Carver v. Sheriff of LaSalle County.*, 324 F.3d 947 (7th Cir. 2003), the Seventh Circuit certified a question to the Supreme Court of Illinois "whether, and if so when, Illinois requires counties to pay judgments entered against a sheriff's office in an official capacity." The Illinois Supreme Court answered that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Carver v. Sheriff of LaSalle Cty., Ill.*, 787 N.E.2d 127, 141 (Ill. 2003). Subsequently, the Seventh Circuit held that "[b]ecause state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver*, 324 F.3d at 948. Moreover, statutory authority in Illinois requires counties pay any judgment or settlement recovered against the Clerk of the Circuit Court. *See* 705 ILCS 105/27.3(a).